# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CHARLTON W. OLIVER,

      Petitioner,

v.                                   Case No. 8:12-cv-2748-T-33EAJ

SECRETARY, DEPT. OF CORRECTIONS,

      Respondent.

_____

## ORDER

      Petitioner Charlton W. Oliver, an inmate in the Florida Department of Corrections who is proceeding *pro se*, filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 6).  He challenges his conviction for DUI manslaughter entered in the Sixth Judicial Circuit, Pasco County, Florida, in 2009.  Respondent filed a response (Doc. 24), and Oliver filed a reply (Doc. 29).  Upon review, the petition must be denied.

## PROCEDURAL HISTORY

      The State of Florida charged Petitioner with one count of DUI manslaughter and one count of manslaughter by culpable negligence. (Ex. 14, Vol. II, pp. 1-2.) After a jury convicted him of both charges, the state trial court dismissed the charge of manslaughter by culpable negligence.  (Ex. 14, Vol. III, p. 287.)  Oliver was sentenced to fifteen years in prison.  (Id., p. 312.)  The state district court of appeal *per curiam* affirmed his conviction and sentence.  (Ex. 4.)[1]  Oliver filed a state habeas petition alleging ineffective assistance

---

[1]During the pendency of his direct appeal, Oliver's motion to correct sentencing errors (Ex. 7) filed under Florida Rule of Criminal Procedure 3.800(b)(2) was granted in part and denied in part.  As a result, several court costs imposed at sentencing were stricken.  (Ex. 8.)

of appellate counsel (Ex. 9), which the state district court of appeal denied without comment

(Exs. 10, 13).  His motion for rehearing (Ex. 11) was also denied (Ex. 12).  Respondent

does not challenge the timeliness of Oliver's federal habeas petition.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert.*

*denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody

"in violation of the Constitution or laws or treaties of the United States."   28 U.S.C.

§ 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court

review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court. Under
> § 2254(d)(1), the writ may issue only if one of the following two conditions is
> satisfied—the state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined by the
> Supreme Court of the United States" or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States." Under the "contrary to" clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster,* _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a

'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, *i.e.,* the record before the state court.

*Pinholster,* 131 S. Ct. at 1398.

## DISCUSSION

## I.

Oliver presents claims of prosecutorial misconduct and trial court error in Grounds One, Two, and Three.  For the reasons addressed, however, these claims are construed as asserting ineffective assistance of appellate counsel.  To the extent they raise

substantive allegations of prosecutorial misconduct and trial court error, these grounds are unexhausted.  Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both

the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picara v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

In Florida, claims of prosecutorial misconduct are properly raised on direct appeal. *See Spencer v. State*, 842 So.2d 52, 60 (Fla. 2003). The same is true for claims of trial court error. *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001). However, Oliver did not raise the allegations of trial court error and prosecutorial misconduct presented in Grounds One, Two, and Three on direct appeal. (Ex. 1.) Accordingly, they are unexhausted.

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Oliver cannot return to state court, as state procedural rules do not provide for successive direct appeals. *See* Fla. R. App. P. 9.140. Thus, these claims are procedurally defaulted.

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly

in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Oliver does not demonstrate that either exception to the procedural default rule applies. *See Smith*, 256 F.3d at 1138. The claims of prosecutorial misconduct and trial court error are procedurally barred from federal habeas review. In his reply, Oliver contends that appellate counsel was ineffective for failing to raise the claims of prosecutorial misconduct and trial court error asserted in Grounds One, Two, and Three. A petitioner is generally prohibited from raising a new claim for relief in a reply if it does not "relate back" to a claim in the pleading. *See Pruitt v. United States*, 274 F.3d 1315, 1318-

19 (11th Cir. 2001); *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). In

his federal habeas petition, however, Oliver also states that he raised Grounds One, Two,

and Three in his state habeas petition. Oliver asserted ineffective assistance of appellate

counsel in that proceeding, and the state district court of appeal's denial reflects that it

considered Oliver's allegations as such. (Ex. 13.) Therefore, to the extent Oliver meant

to raise in his federal habeas petition the same claims of ineffective assistance of appellate

counsel that he brought in his state habeas petition, the claims are considered.

### Standard For Claims Of Ineffective Assistance Of Counsel

Claims of ineffective assistance of counsel are analyzed under the test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and
> well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test
> for analyzing ineffective assistance of counsel claims. According to
> *Strickland*, first, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment. Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). In order to show deficient

performance, a petitioner must demonstrate that "in light of all the circumstances, the

identified acts or omissions [of counsel] were outside the wide range of professionally

competent assistance." *Strickland*, 466 U.S. at 690. However, "counsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." 466 U.S. at 690. Additionally, "a court

deciding an actual ineffectiveness claim must judge the reasonableness of counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   466 U.S. at 690.   To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

Claims that appellate counsel provided ineffective assistance are analyzed under the two-part test set forth in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  To establish a claim, Petitioner must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Petitioner would have prevailed on his appeal.  *Robbins*, 528 U.S. at 285-86.

**Analysis of Ineffective Assistance of Appellate Counsel Claims**

**Ground One**

Oliver argues that appellate counsel was ineffective for not raising a claim of prosecutorial misconduct based on improper comments during closing argument. Oliver was convicted of DUI manslaughter. He did not dispute that after he consumed alcohol, he was driving a car when it crashed. Passenger Michelle Bingham later died. Oliver asserts that the prosecutor's statement suggesting he patronized a particular bar where he consumed eleven to twelve drinks was improper.

At trial, Oliver testified that after he and Bingham drank alcohol at his apartment, he drove her to a nearby Taco Bell and then to a Speedway. Oliver testified that to get to Speedway, "I went down 301 to Eland Boulevard. I turned right on Eland. I drove all the way down to Dean Dairy. I turned left on Dean Dairy which dead ends at 54 and Coats and it's - - the store's there." (Ex. 14, Vol. V, p. 315.) Upon leaving the store, he got onto Coats Road and traveled two to three hundred yards. (Id., p. 317.) Authorities responded to the crash at Coats Road and Lonno Court. On cross-examination, Oliver stated that he believed a bar called Cheers 54 was located next to Coats Road. (Id., p. 338.) However, he denied ever having been into Cheers 54 when the prosecutor asked if he and Bingham were drinking there before getting onto Coats Road. (Id.)

After the crash, both Oliver and Bingham were taken to a hospital. Ronald Bell, a forensic toxicologist, testified regarding tests performed on a blood sample obtained from Oliver at the hospital. Bell testified that he calculated "the minimum amount of alcohol that would have had to have been consumed to achieve that serum alcohol concentration that was measured [in Oliver] is 11 to 12 drinks by definition." (Ex. 14, Vol. IV, p. 110.) Bell

also testified as to the meaning of a "standard drink by definition."  (Id., pp. 109-110.)

During closing arguments, the prosecutor stated:

> And they turn, you heard him say, on Eland Boulevard and they go about five miles.  And what was the testimony of Mr. Oliver when I asked him, isn't there a Cheer's right there, Cheers 54 Bar, slash, Pub right there at the intersection of State Road 54 and Coats.  And he testified to you on one side is Dean Dairy, on the other side it's Coats.
>
> He says he's never been in there.  But I submit to you that's where they were that night.  And I submit to you that he had 11 to 12 drinks by definition.

(Ex. 14, Vol. VI, at p. 403.)   Oliver argues that the State committed prosecutorial misconduct and violated his due process rights.   He alleges that this comment was improper because it involved the prosecutor's personal opinion and facts not in evidence, prejudiced and influenced the jury and violated his right to an impartial jury, shifted the burden of proof, and violated his right to compulsory process to obtain witnesses in his defense.  The state district court of appeal denied, without comment, Oliver's assertion that appellate counsel was ineffective for not raising this claim.  (Ex. 13.)[2]

As a preliminary matter, appellate counsel cannot be deemed ineffective for failing to raise this claim because it was not preserved for appellate review.  The record reflects that defense counsel made no objection to the prosecutor's statement.  (Ex. 14, Vol. VI, at

---

[2] Oliver's assertion that appellate counsel was ineffective for not raising the claim because the prosecutor's comment violated his right to compulsory process to obtain witnesses was not raised in his state habeas petition.  (Ex. 9, pp. 5-10.)  A petitioner may not present a particular factual instance of ineffective assistance of counsel in his federal habeas petition that he did not present to the state court. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005); *Johnson v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998).  If a petitioner raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts in his federal habeas petition, he has failed to fairly present the federal claim to the state court. *See Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994).  Oliver's failure to present this allegation to the state court renders it unexhausted.  Oliver cannot return to state court to file a successive, untimely petition alleging ineffective assistance of appellate counsel.  Fla. R. App. P. 9.141(d).  Therefore, this allegation is procedurally defaulted, and Oliver does not argue or demonstrate that either exception to the procedural default applies.

p. 403.)  In Florida, a contemporaneous objection must be made to preserve a claim of improper prosecutorial comment for appeal.  *See Brooks v. State*, 762 So.2d 879, 898 (Fla. 2000) ("As a general rule, [the Florida Supreme] Court has determined that failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review.").  Appellate counsel cannot be deemed ineffective for not raising the argument because the appellate court would not have considered an unpreserved claim.  *See Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005); *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992); *Francois v. Wainwright*, 741 F.2d 1275, 1285-86 (11th Cir. 1984).

Notwithstanding, Oliver fails to show entitlement to relief.  Even if the claim had been preserved, Oliver does not establish that appellate counsel was ineffective for not raising it.[3]  To establish a prosecutorial misconduct claim, Oliver must show that the challenged conduct was both improper and prejudicially affected his substantial rights.  *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995).  Habeas relief is available based upon an improper prosecutorial remark only if it is so egregious that the proceeding is rendered fundamentally unfair.  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  *Darden*, 477 U.S. at 181, further explains:

---

[3]Oliver argues in his reply that the State's comment constituted fundamental error.  An unpreserved claim of improper prosecutorial comment may be raised on direct appeal if it constitutes fundamental error.  *See McDonald v. State*, 743 So.2d 501, 505 (Fla. 1999).  Any argument that his prosecutorial misconduct claim could have been raised for the first time on direct appeal despite the lack of preservation does not provide relief.  Oliver fails to demonstrate that appellate counsel should have raised the claim.

The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 [643] . . . (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642 . . . .

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987). A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole because "[c]laims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995). *Accord United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While he may not go beyond the evidence presented to the jury, the prosecutor is not limited to a bare recitation of the facts. The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). In Florida, "[w]hile wide latitude is permitted in closing argument, *see Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982), this latitude does not extend to permit improper argument." *Gore v. State*, 719 So.2d 1197,

2000 (Fla. 1998).   *See also McArthur v. State*, 801 So.2d 1037, 1040 (Fla. 5th DCA 2001) ("The courts generally allow wide latitude in closing arguments by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence.").   Prior to closing arguments, the state trial court instructed the jury that "what the attorneys say is not evidence or your instruction on the law."   (Ex. 14, Vol. V, p. 388.)   Jurors are presumed to follow the court's instructions.   *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001).

Oliver fails to meet his burden of showing that the prosecutor's comment was both improper and prejudiced his substantial rights.   Considered in context of the entire trial, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting convictions amount to a denial of due process.   *Tucker*, 802 F.2d at 1296.

Oliver does not show that the prosecutor's comments shifted the burden of proof. A prosecutor "must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence."   *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992).   When such an argument "permeates the entire atmosphere of the trial," reversal for prosecutorial misconduct is warranted.   964 F.2d at 1086 (internal quotation marks omitted).   The prejudice from burden-shifting comments "can be cured by a court's instruction regarding the burden of proof."   964 F.2d at 1087. Even assuming the comment was improper, it was an isolated remark that did not permeate the atmosphere of the proceeding.   After closing arguments, the trial court instructed the jury that "[t]o overcome the defendant's presumption of innocence, the State has the burden of proving the crime with which the defendant is charged was committed,

and the defendant is the person who committed the crime.  The defendant is not required to present evidence or prove anything."  (Ex. 14, Vol. VI, p. 458.)

Accordingly, Oliver fails to show that appellate counsel was ineffective for raising this claim of prosecutorial misconduct.  Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).   Furthermore, appellate counsel is not required to raise every non-frivolous issue on appeal.  *Heath*, 941 F.2d at 1130-31.   Rather, "effective advocates 'winnow out' weaker arguments" even when such arguments may have merit.  941 F.2d at 1131.  Appellate counsel may choose to focus on the strongest claims while excluding claims that might have a lower chance of success or detract from stronger arguments.  *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

Accordingly, Oliver fails to demonstrate that the state appellate court's rejection of his claim was contrary to or an unreasonable application of controlling Supreme Court precedent or was based on an unreasonable determination of the facts.  Oliver is not entitled to relief on Ground One.

**Ground Two**

Oliver contends appellate counsel should have argued that the State violated his right to a fair trial by attacking his attorney's character and credibility on two occasions.  In support, Oliver further argues that the prosecutor's comments violated his Sixth and Fourteenth Amendment rights.

The first prosecutorial remark identified by Petitioner was made during the testimony of Henry Pittman, the trauma nurse at the hospital who documented patients' emergency

room charts based on information given to him from other hospital personnel.   At trial,

Oliver asserted that he had a heart attack and lost consciousness at the time of the crash.

The following occurred during the second re-direct examination:

> [STATE]:       But just so there's no confusion, he indicated he had past history but he never indicated and you never documented that he was attributing the crash to any cardiac event?
>
> [PITTMAN]:       No.
>
> [COUNSEL]:       Judge, I'm going to object and based on the nature of the question as being compound. But this witness has already testified that he didn't take any information directly from the patient, that he wrote down only things that were called out to him by another individual.
>
> THE COURT:       Counsel?
>
> [STATE]:       Well, Judge, I think [counsel]'s not intentionally trying to confuse the jury, but I think he's confusing the jury in his cross-examination of this witness and I think I'm entitled to clear that up.
>
> [COUNSEL]:       Judge, I'm going to object to the connotation that I'm trying to confuse anybody here.
>
> THE COURT:       Strike that and ask the jury to disregard it that you would ever try to confuse them.

(Ex. 14, Vol. IV, pp. 73-74.)   Oliver contends that the comment that his attorney was

confusing the jury was improper.   The second prosecutorial remark occurred during the

testimony of Steven Doud, a firefighter and paramedic who responded to the crash.   He

testified on direct examination that he asked both occupants of the car if they had anything

to drink.   (Id., p. 117.)   On cross-examination, counsel referred to portions of Doud's

deposition indicating that he had contact with the passenger, but was not involved in the

interview of the driver.   (Id., p. 122.)   The following took place during re-direct examination:

| | |
|---|---|
| [STATE]: | So if you reviewed Page 6 [of the deposition], would that refresh your recollection as to whether or not they both indicated that they had been drinking? |
| [COUNSEL]: | Judge, objection.  I mean, he's just responded to the question. |
| [STATE]: | But [counsel] took everything out of context, Judge. |
| THE COURT: | All right.  Go ahead. |
| [COUNSEL]: | I object to that characterization. |
| THE COURT: | Go ahead. |

(Id., p. 124.)  Oliver argues that the prosecutor's comment that counsel "took everything out of context" was improper, and that the comment's prejudicial effect was compounded by the lack of a curative instruction from the court.[4]

Oliver raised this claim of ineffective assistance of appellate counsel in his state habeas petition, which the state district court of appeal denied.  Oliver does not show entitlement to relief.  Preliminarily, the comment during Pittman's testimony was not preserved for appeal to the extent Oliver's objection was sustained through the court's curative instruction.  He was required to move for a mistrial to preserve the claim.  *See Simpson v. State*, 418 So.2d 984, 986 (Fla. 1982) ("[I]f there is a contemporaneous objection and the trial court finds that there has been an improper comment and sustains the defendant's objection . . . [t]he defendant must move for mistrial if he wishes to

_____

[4] In his memorandum of law, Oliver asserts that the state court erred in failing to provide a curative instruction following the prosecutor's comment.  Any substantive claim of trial court error that Oliver may intend to raise is unexhausted because Oliver did not raise it on direct appeal.  (Ex. 1.)  The claim is procedurally defaulted, and Oliver does not establish the applicability of either exception to overcome the default.  To the extent this allegation was brought in state court, it appears to have been asserted solely in support of his ineffective assistance of appellate counsel claim.  (Ex. 9, p. 13.)  Accordingly, this allegation is construed as support for Oliver's claim that appellate counsel was ineffective in not raising the claim of prosecutorial misconduct presented in Ground Two of Oliver's federal habeas petition.

preserve his objection . . . ."). Appellate counsel is not ineffective for failing to raise a claim that was not preserved for appellate review.

Notwithstanding, Oliver is not entitled to relief regarding either comment because he fails to demonstrate that appellate counsel was ineffective for not raising a claim of prosecutorial misconduct based upon these comments.[5]   While it is improper for a prosecutor to personally attack defense counsel on the basis of counsel's cross-examination of witnesses, see *Fuller v. State*, 540 So.2d 182, 185 (Fla. 5th DCA 1989), Oliver fails to meet his burden of showing that the prosecutor's statements were improper and prejudicially affected his substantial rights such that his trial was rendered unfair. *Sexton*, 55 F.3d at 1559.   This conclusion is not changed by  Oliver's contention that the trial court's curative instruction during Pittman's testimony was insufficient, or that the court should have given a curative instruction in response to the prosecutorial comment during Doud's testimony.  Even assuming that the prosecutor's comments were improper, when taken in context of the trial as a whole, the comments did not render the entire trial fundamentally unfair or infect the trial with such unfairness that Oliver was denied due process. *Tucker*, 802 F.2d at 1296.  Appellate counsel is not ineffective for failing to raise meritless or weak claims.  *See Nyhuis*, 211 F.3d at 1344; *Heath*, 941 F.2d at 1130-31.

Accordingly, Oliver fails to demonstrate that the state district court of appeal's rejection of his claim of ineffective assistance of appellate counsel was contrary to or an unreasonable application of controlling Supreme Court precedent or was based on an

---

[5] Oliver asserts that the statements constituted fundamental error.  To the extent he attempts to argue that the comment made during Pittman's testimony could have been raised on direct appeal even if was not preserved for review, he is not entitled to relief.  He fails to demonstrate that counsel was ineffective for not raising the claim.

unreasonable determination of the facts.  Ground Two warrants no relief.

**Ground Three**

Oliver contends that appellate counsel was ineffective for not arguing that the trial court erred in denying his motion for mistrial, which he made upon the court's rejection of his request for special jury instructions.  He claims that the state court violated his Sixth and Fourteenth Amendment rights.

To prove DUI, the State must show that the defendant either was under the influence to the extent that his normal faculties were impaired, or, as relevant here, had a blood alcohol level of .08 or more grams of alcohol per 100 milliliters of blood.[6]  Forensic toxicologist Ronald Bell stated that testing of Oliver's blood sample revealed a serum alcohol concentration of .203.  (Ex. 14, Vol. IV, p. 99.)  Bell testified that, based on this information, he calculated Oliver's blood alcohol concentration at the time the blood sample

---

[6]Section 316.193, Fla. Stat. (2003) provides:

(1) A person is guilty of the offense of driving under the influence . . . if the person is driving or in actual physical control of a vehicle within this state and:

(a) The person is under the influence of alcoholic beverages . . . when affected to the extent that the person's normal faculties are impaired; [or]

(b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood[.]
. . . .

(3) Any person:

(a) Who is in violation of subsection (1);

(b) Who operates a vehicle; and

(c) Who, by reason of such operation, causes or contributes to causing:
. . . .

3. The death of any human being commits DUI manslaughter . . . .

was collected to be approximately .167.  (Id., pp. 99-100.)   Bell used the process of retrograde extrapolation to estimate that Oliver's blood alcohol concentration was approximately .19 at the time of the crash.  (Id., p. 105.)

After presenting its case, however, the State conceded that it was limited to showing DUI on the theory that Oliver was under the influence to the extent his normal faculties were impaired, rather than on the theory that the blood alcohol evidence established a presumption of impairment.[7]   Consequently, counsel asked the trial court to instruct the jury that evidence that Oliver's blood alcohol content was .08 or more did not constitute a basis for conviction, and that the jury could not consider what any witness opined was the "legal limit." (Ex. 14, Vol. V, pp. 366-67.)[8]  Counsel also asked the court to strike Bell's testimony regarding extrapolation and to instruct the jury that they could not consider Bell's opinion regarding Oliver's blood alcohol level at the time of the crash.  (Id., pp. 370-71.)[9] Counsel then moved for a mistrial, which the court denied.  (Id., pp. 381-83.)[10]

---

[7] During the jury charge conference, defense counsel argued that the State was precluded from establishing  DUI based on evidence of Oliver's blood alcohol levels because of the manner in which it introduced this evidence.  (Ex. 14, Vol. V, pp. 346.) Therefore, counsel asserted, the State was limited to proceeding under the theory that Oliver was under the influence to the extent his normal faculties were impaired.  (Id., pp. 346-47.)  In support, counsel cited State v. Schreiber, 835 So.2d 344 (Fla. 4th DCA 2003). The State conceded to the omission of the jury instructions concerning blood alcohol levels and later specifically indicated it was required to show that Oliver's normal faculties were impaired.  (Id., pp. 350, 368.)

[8] The prosecutor twice asked Bell about the significance of his calculations in relation to the "legal limit" of .08.  (Ex. 14, Vol. IV, pp. 100, 105.)  Counsel objected to these questions. (Id.)  Bell was permitted to answer that his calculations of .167 and .19 were more than twice .08. (Id., pp. 101, 105.)

[9] When the trial court denied this request, counsel asserted that the court had already ruled this evidence inadmissible.  (Ex. 14, Vol. V, p. 378.)  However, the court stated that it would permit the jury to consider the evidence presented. (Id., pp. 378-79.)  Although Oliver argues in his federal habeas petition that the court had ruled inadmissible the evidence concerning his blood alcohol level, the record indicates that the court allowed the jury to consider such evidence.

[10] Counsel filed his proposed instructions in written form.  (Ex. 14, Vol. II, pp. 142-43.)  Counsel renewed his request for special jury instructions and request for mistrial before the trial court instructed the jury.  (Ex. 14, Vol. VI, pp. 445-46.)  After the jury was instructed, counsel objected to the instructions due to

Oliver fails to demonstrate that appellate counsel was ineffective for not arguing trial court error based on the denial of Oliver's request for jury instructions and subsequent motion for mistrial.  He does not establish that the trial court violated his rights to due process or a fair trial.  On federal habeas review, alleged error in jury instructions is reviewed for the denial of fundamental fairness and due process. *See Henderson v. Kibbe*, 431 U.S. 145, 156–57 (1977).  The challenged instruction must not be viewed in isolation; the habeas court should consider the context of the instructions as a whole as well as the entire trial record. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Agan v. Vaughn*, 119 F.3d 1538, 1545 (11th Cir.1997) ("A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair.").  Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Kibbe*, 431 U.S. at 155. In such cases, the habeas petitioner's burden is "especially heavy."  *Id.*; *Devier v. Zant*, 3 F.3d 1445, 1465 (11th Cir.1993).

Under Florida law, a court acts within its discretion in deciding whether to give a particular jury instruction.  "[A]bsent 'prejudicial error,' such decisions should not be disturbed on appeal." *Card v. State*, 803 So.2d 613, 624 (Fla. 2001).  *See also James v. State*, 695 So.2d 1229, 1236 (Fla. 1997) ("[A] trial court has wide discretion in instructing the jury, and the court's decision regarding the charge to the jury is reviewed with a presumption of correctness on appeal.").  Similarly, a ruling on a motion for mistrial is within the trial court's discretion. *See Snipes v. State*, 733 So.2d 1000, 1005 (Fla. 1999) ("A

---

the omission of his proposed instructions.  (Id., pp. 466-67.)

decision on a motion for mistrial is within the discretion of the trial judge and such a motion should be granted only in the case of absolute necessity."). "An order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial." *Dessaure v. State*, 891 So.2d 455, 464-65 (Fla. 2004).

The jury was instructed that, to prove the crime of DUI manslaughter, the State was required to prove that Oliver was under the influence "to the extent that his normal faculties were impaired." (Ex. 14, Vol. VI, p. 447.) This is the theory to which Oliver argued the State should be limited. The jury was further instructed that normal faculties include "but are not limited to, the ability to see, hear, walk, talk, judge distances, drive an automobile, make judgments, act in emergencies and in general to normally perform the many mental and physical acts of our daily lives." (Id., p. 448.) The jury was not instructed that they could rely on blood alcohol levels to find Oliver guilty of DUI manslaughter or that a blood alcohol level of .08 or more could be used to presume guilt. Oliver fails to demonstrate that the trial court's refusal to give his requested jury instructions rendered his trial fundamentally unfair. *See Kibbe*, 431 U.S. 156-57. Oliver does not show that the court's denial of his motion for mistrial, which he made because the court refused to give his proposed jury instructions, was an error of such a magnitude as to render his trial fundamentally unfair.

Therefore, Oliver does not show that appellate counsel was ineffective for not raising this claim of trial court error. Oliver fails to demonstrate that the state district court of appeal's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Consequently, Oliver is not entitled to relief on Ground Three.

## II.

**Ground Four**

Bingham was transported to the hospital on November 23, 2003, after the crash. She died on December 4, 2003.  Dr. Samuel Galena, a former associate medical examiner, testified that Bingham's cause of death was sepsis, which arose from an infection called peritonitis caused by the perforation of the intestines.  (Ex. 14, Vol. IV, pp. 147-48.)  He stated that the cause of Bingham's death was a result of having been in the crash.  (Id., p. 143.)

Oliver theorizes, however, that Bingham's death was caused by medical malpractice because she was not properly diagnosed or treated at the hospital. Oliver wanted to present evidence of the alleged malpractice and to question Dr. Nicholas Price about a medical malpractice claim that Bingham's estate filed against him.  Prior to trial, the State filed motions in limine seeking to prevent the defense from eliciting testimony about any medical malpractice claim filed regarding Bingham's death and from eliciting testimony concerning the standard of proper care as it related to Bingham's cause of death. (Ex. 14, Vol. II, pp. 124-25, 135-36.)

During the hearing on the State's motions, the parties informed the trial court that the medical malpractice claim filed by Bingham's estate against Dr. Price had been dismissed and could not be re-filed under Florida's statute of limitations.  (Ex. 14, Vol. III, pp. 319-22.)  The court granted the State's motion in limine to prohibit testimony about the medical malpractice claim.  (Id., pp. 322-23.)  The court also granted the State's motion in limine to prevent testimony regarding the proper standard of care.  It relied on *Barnes v. State*, 528 So.2d 69 (Fla. 4th DCA 1988), for the proposition that a defendant cannot be

relieved of liability for a victim's death despite intervening negligent medical treatment. (Id., p. 336.)[11] Accordingly, Dr. Price, who treated both Oliver and Bingham, testified at trial only about his treatment and observations of Oliver. Defense counsel cross-examined Dr. Price. (Ex. 14, Vol. IV, pp. 195-200; Vol. V, pp. 203-06.)[12]

Oliver contends that the trial court committed reversible error because its rulings limiting his presentation of evidence prevented him from asserting a defense.[13]  In his memorandum of law, Oliver further states that the trial court's error violated his federal constitutional rights to a speedy trial, an impartial jury, confrontation, due process, compulsory process, and effective assistance of counsel.[14] Oliver raised this claim of error on direct appeal. The state appellate court rejected his claim when it *per curiam* affirmed Oliver's judgment and sentence.

---

[11] Upon granting this motion, the state trial court found the State's final motion in limine, which sought to limit testimony of Dr. Edward Willey regarding the proper standard of care as it related to Bingham, to be moot. (Ex. 14, Vol. II, pp. 126-134; Ex. 14, Vol. III, p. 338.) Oliver proffered the testimony of Dr. Willey, who stated his belief that Bingham more likely than not would have survived had she been operated on early in her hospital stay. (Ex. 14, Vol. III, p. 278.) As Dr. Galena later testified at trial, Bingham had intestinal surgery on November 25, 2003. (Ex. 14, Vol. IV, pp. 139-40,154.)

[12] After Dr. Price testified before the jury, counsel proffered testimony from Dr. Price concerning his treatment of Bingham. (Ex. 14, Vol. V, pp. 206-210.) In accordance with the prior ruling on the State's motions in limine, the court denied counsel's requests to examine Dr. Price on this issue before the jury and present Dr. Price's deposition to the jury. (Id., pp. 212-13, 215-16.)

[13] Oliver states in his federal habeas petition that it was the prosecutor who prevented him from cross-examining the doctor. To the extent Oliver intends to raise a substantive claim of prosecutorial misconduct, it is unexhausted because he did not raise it on direct appeal. (Ex. 1.) Such a claim would be procedurally defaulted. Oliver does not argue or demonstrate the availability of either exception to the procedural default rule. This allegation is therefore construed as support for Oliver's overall claim that the state trial court erred in limiting his cross-examination of Dr. Price.

[14] In his reply, Oliver asserts for the first time that appellate counsel was ineffective for not raising this claim of trial court error on direct appeal. However, appellate counsel raised this issue and asserted the same constitutional violations that Oliver alleges in his federal habeas petition. (Ex. 1.) Notwithstanding the bar to raising new claims in a reply, any other claim of ineffective assistance of appellate counsel that Oliver may intend to bring in connection with the allegation of trial court error presented in Ground Four is unexhausted because he failed to raise such a claim in his state habeas petition. (Ex. 9.) Any such claim is procedurally defaulted, and Oliver does not establish the applicability of either exception to overcome the default.

To the extent Oliver's claim simply involves the state trial court's application of Florida evidentiary law, it cannot provide federal habeas relief.  A federal habeas petitioner must demonstrate that his conviction violates the Constitution, laws, or treaties of the United States in order to obtain relief.  28 U.S.C. § 2254(a).  A federal habeas court cannot review a state court's determination or application of state law because no federal question is presented.  *Estelle v. McGuire*, 502 U.S. at 67-68; *Fulley v. Harris*, 465 U.S. 37, 41 (1984).

Moreover, a state court's evidentiary ruling cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-202 (1977)).  Because the implementation of state evidentiary rules is afforded wide latitude, federal habeas relief is rarely appropriate for a claim of state evidentiary error.  *See Maness v. Wainwright*, 512 F.2d 88, 92 (5th Cir. 1975); *Boykins v. Wainwright*, 737 F.2d 1539, 1543-44 (11th Cir. 1984).  "[S]uch trial court errors are subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Sims v. Singletary*, 155 F.3d at 1312 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

A petitioner is entitled to relief only "where a trial court's evidence ruling renders a state criminal proceeding fundamentally unfair." *Boykins*, 737 F.2d at 1544.  "A denial of fundamental fairness occurs when the evidence is 'material in the sense of a crucial, critical, highly significant factor.'" *Smith v. Wainwright*, 741 F.2d 1248, 1258 (11th Cir. 1984) (quoting *Jameson v. Wright*, 719 F.2d 1125, 1126 (11th Cir. 1983)).  "Such a determination

is to be made in light of the evidence as a whole." *Felker v. Turpin*, 83 F.3d 1303, 1312 (11th Cir. 1996).

A criminal defendant is entitled to present a defense and call witnesses. "The right to present witnesses in one's own defense in a criminal trial lies at the core of the Fifth and Fourteenth Amendments' guarantee of due process of law." *Boykins*, 737 F.2d at 1544. However, reasonable restrictions may limit a defendant's right to present relevant evidence. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). *See also Michigan v. Lucas*, 500 U.S. 145, 149 (1991) ("The right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'") (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)). A defendant does not "have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Egelhoff*, 518 U.S. at 42 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

The Supreme Court recently stated in *Nevada v. Jackson*, __ U.S. __, 133 S.Ct. 1990, 1992 (2013):

> "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,' " *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)), but we have also recognized that " 'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials,' " *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)). Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence . . . .

Oliver does not show that the trial court's ruling rises to a violation of federal law on the bases asserted.   He fails to demonstrate evidentiary errors that rendered his trial fundamentally unfair, in light of the proceeding as a whole.  *Felker*, 83 F.3d at 1311-12.[15]

Oliver's claim that the trial court's errors violated his right to confrontation appears to involve the limitation on his cross-examination of Dr. Price.  The Confrontation Clause "guarantees a criminal defendant the right to impeach adverse witnesses through cross-examination."  *United States v. Carter*, 776 F.3d 1309, 1328 (11th Cir. 2015).   A violation of the Confrontation Clause is stated "by showing that [the defendant] was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of  the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'"  *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).

Oliver had the opportunity to cross-examine Dr. Price concerning the matters about which he testified on direct examination.  Although Oliver contends that Dr. Price had motivation to testify in a way that deflected attention from his alleged errors in treating Bingham, the malpractice suit was not at issue.  Oliver does not establish that he was entitled to cross-examine any witness about a matter that the trial court ruled inadmissible

---

[15]To the extent Oliver argues that the trial court's alleged errors violated his right to effective assistance of counsel, he is not entitled to relief.  He does not explain how the court's alleged error affected counsel's performance.  Similarly, to the extent Oliver claims that the trial court's errors violated his right to a speedy trial, he alleges no facts in support of this claim.  Neither allegation warrants federal habeas relief. To the extent he raised these allegations as part of his trial court error claim on direct appeal, they were rejected when the state appellate court affirmed his judgment and sentence.  Oliver fails to show that the state appellate court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.

or about which the witness did not testify on direct examination.  He fails to demonstrate that any limitation on his questioning of Dr. Price interfered with his right to confrontation.

Furthermore, Oliver presented a theory of defense at trial.  He claimed that the State failed to show the element of causation because the accident occurred when he suffered a heart attack and lost consciousness.  In support, Oliver testified about his history of heart problems, including past heart attacks and an open heart surgery performed on him after the crash.  (Ex. 14, Vol. V, pp. 299, 320.)  He testified that the last thing he remembered before losing consciousness in the car was grabbing his chest.  (Id., p. 317.)  Oliver also called Dr. Shahid Malik, a cardiologist who had treated him.  Dr. Malik testified to his belief that Oliver probably suffered a heart attack at the time of the accident, and that if so, there was a very strong possibility Oliver would have lost consciousness.  (Id., pp. 266, 271.)

Oliver fails to show that the state trial court's rulings violated his federal rights by preventing him from setting forth a defense or by rendering his trial unfair.  Consequently, he does not demonstrate that the state appellate court's rejection of his claim was contrary to or an unreasonable application of controlling Supreme Court precedent, or was based upon an unreasonable determination of the facts.  Ground Four warrants no relief.

Accordingly, the Court orders:

That Oliver's amended Section 2254 petition (Doc. 6) is DENIED.  The Clerk is directed to enter judgment against Oliver and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Oliver is not entitled to a certificate of appealability.

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district

court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Oliver "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Oliver has not made the requisite showing in these circumstances.

Finally, because Oliver is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED in Tampa, Florida, on April 3, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Charlton W. Oliver
Counsel of Record